BAUMHARDT ET AL., APPELLEES, *v.* MITCHELL, RECORDER, ET AL., APPELLEES; RAUH ET AL., APPELLANTS.*

---

*Motion to certify the record overruled, December 31, 1958. For opinion on motion to dismiss, see 105 Ohio App., 491.

210

(No. 1413—Decided August 13, 1958.)

*Mr. Andrew M. Keep,* for appellees Kenneth Baumhardt et al.

*Mr. Paul J. Mikus,* prosecuting attorney, for appellee Leota B. Mitchell, county recorder.

*Mr. William G. Wickens,* for appellees John J. Foley, Jr., et al.

*Messrs. Wilcox & Wilcox* and *Mr. David George,* for appel-

lants Louis Rauh, Jr., and Robert K. Young, agents for certain petitioners for the incorporation of an area into a village.

Mr. Robert J. Corts, for appellant Ralph Leimbach, agent for petitioners for the annexation.

Hunsicker, P. J. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court of Lorain County, Ohio.

The cause is heard in this court de novo on the transcript of the testimony and exhibits presented in the trial court, together with certain additional oral testimony, and written stipulations entered into by counsel for the parties.

On August 28, 1957, a petition to annex lands was handed to Mr. J. Norman Thompson, president of the Board of County Commissioners of Lorain County, at his residence. This petition, hereinafter known as the "Nardini annexation petition," sought to annex a part of Brownhelm Township of Lorain County to the city of Lorain, Lorain County, Ohio.

On August 29, 1957, the Nardini annexation petition was taken by Mr. Thompson to the office of the Board of County Commissioners. The clerk of the Board of County Commissioners then placed the file stamp thereon.

Oral testimony was introduced to show that, on August 30, 1957, at an adjourned regular meeting of that board, held about 10:30 a. m., the Nardini petition was read and discussed, but no action was taken concerning it. No mention of these facts was entered in the minutes of that meeting.

On September 3, 1957, the record of the proceedings of the Board of County Commissioners shows that the Nardini petition was "presented" to the board, and a hearing on such a petition was set for November 4, 1957. After approval of this petition, and its transfer to the council of the city of Lorain, nothing further was done concerning it by the council of the city of Lorain, pending the outcome of this action.

The records of Brownhelm Township show that, on August 30, 1957, at a special meeting of the Board of Trustees of that township, called for 8 o'clock p. m., there was then presented to that board a petition to incorporate certain portions of Brownhelm Township as a village. This petition contained, in

addition to the other matters required to be a part of such a petition, a description of an area sought to be incorporated as a village, and a map of an area sought to be thus incorporated. A part of this land was also included in the Nardini annexation petition. The overlapping lands are in the northeastern portion of Brownhelm Township.

At a hearing on this incorporation petition, before the trustees of Brownhelm Township, held on September 24, 1957, the request of the petitioners was approved, and an election was thereafter held on October 28, 1957, as required by Section 707.16, Revised Code. Approval was given by the electors to the incorporation of the village of Brownhelm, in accord with the description contained in the petition for incorporation and the map attached thereto.

On November 4, 1957, there was presented to the recorder of Lorain County, copies of all of the proceedings to incorporate the village of Brownhelm, for the purpose of entering upon the records of that office the incorporation of such village, as required by Section 707.19, Revised Code.

On November 8, 1957, there was filed, in the Common Pleas Court of Lorain County, the instant action to restrain the recorder of that county "from making a record of the petition, transcript and map in the public book of records, and from certifying and forwarding a transcript thereof to the Secretary of State of the state of Ohio."

The pleadings in this court are a petition, a cross-petition bringing in new parties defendant, whose interests are those of the plaintiffs, and the answers filed to the petition and cross-petition.

The action to enjoin the incorporation sets out many claimed errors, but the principal claims are that: the incorporation petition, filed with the clerk of the Board of Trustees of Brownhelm Township, was filed after the Nardini annexation petition, and hence such board lacked jurisdiction to proceed with the incorporation; the description of the area to be incorporated, which accompanied the annexation petition, was not accurate; the map of the area to be incorporated, which was attached to the annexation petition, was not accurate; the proposed village limits are unreasonably large in one respect, and

in another respect such limits are unreasonably small; it is not right, just or equitable that the incorporation of this village be approved.

The answer of those interested in sustaining the incorporation is in the nature of a general denial, and an assertion that the incorporation proceedings were proper in every respect.

The proponents of the incorporation proceedings say that all of the acts necessary to be performed, in complying with the law for the incorporation of a village by township trustees, have been performed, and that no errors exist which would invalidate such proceedings. They further say that the provisions of the law, Section 707.11, Revised Code, with respect to the right of a court to question the inaccuracy of the boundaries, or that the limits of the proposed incorporation are unreasonably large or small, or that it is not right, just or equitable that the incorporation petition be approved, do not apply where the incorporation is made by the action of a Board of Township Trustees and the electorate votes for incorporation.

They further insist that, under Section 707.20, Revised Code, only errors in the proceedings would invalidate the incorporation.

With this assertion of the village incorporators we cannot agree. As we read Section 707.20, Revised Code, the errors referred to therein comprise all of the matters set out in Sections 707.11 to 707.14, Revised Code, inclusive. The word "error," as used in these sections, applies not only to matters occurring in the preliminary proceedings, such as the number and residences of petitioners, time of hearings, notice to the public, and the voting requirements, but the examination into those other things set out specifically in the statute.

The Supreme Court of Ohio, in the case of *State, ex rel. Loofbourrow, Solicitor,* v. *Board of County Commrs.,* 167 Ohio St., 156, 146 N. E. (2d), 721, in a situation somewhat similar to the case before us now, said:

"2. The election provided for in Section 709.17, Revised Code, operates as a veto upon such annexation proceedings if it is adverse to such annexation, but, if it is favorable to annexa-

tion, such election does not constitute a mandate to the county commissioners to act in a ministerial capacity to effectuate such annexation, the commissioners are still required to exercise their discretion to either allow or deny the petition for annexation, and their denial thereof in good faith, for the reasons that the territory proposed to be annexed is unreasonably large and that it is not right or equitable that the petition for annexation be allowed, is determinative of the issue.''

As to those preliminary steps necessary to be taken by the Board of Township Trustees, we do not find that any error occurred. All the statutory procedural steps necessary to be taken by the Board of Township Trustees to secure a vote of the people were properly had. The people voted overwhelmingly for this incorporation.

Our first inquiry herein will concern the question as to which of the two petitions, the annexation petition, or the incorporation petition, will take precedence. If the annexation petition was presented prior to the filing of the incorporation petition, then we do not need to proceed further. *State, ex rel. Ferris,* v. *Shaver, Recorder,* 163 Ohio St., 325, 126 N. E. (2d), 915; *Hoye* v. *Schaefer, Recorder,* 166 Ohio St., 277, at p. 279, 141 N. E. (2d), 765.

If the incorporation petition has precedence, then our inquiry should consider such questions as: the accuracy of the description; the accuracy of the map; is the area sought to be incorporated unreasonably large, or unreasonably small? and, is it right, just or equitable that the prayer of the petition for incorporation be granted?

Section 709.03, Revised Code, requires that a petition for annexation be presented to the Board of County Commissioners at a regular session; and, when so presented, that certain proceedings shall be had thereafter in accord with ''Sections 707.01 to 707.30, inclusive, of the Revised Code.''

The Nardini annexation petition was in the hands of the Board of County Commissioners on August 29, 1957, it was read by the president of that body to at least one other member in an adjourned session of a regular meeting of that board on August 30, 1957, although no mention of that fact was entered

on the records. The first record in the minutes of the board, concerning the annexation matter herein, shows that the Nardini annexation petition was presented to the Board of County Commissioners on September 3, 1957. At that time, it was, by resolution, determined that the petition was sufficient, in that it contained a full description of the territory sought to be annexed, and that it complied with all the provisions of the law relating to annexation; and, in addition to other pertinent recitations, this resolution fixed a date for a public hearing.

The exhibits submitted herein show that at least four other petitions for annexations were presented to the Board of County Commissioners, and that action was taken thereon on the day when the Nardini annexation petition was acted upon.

Section 709.02, Revised Code, requires that each such petition contain a majority of the adult freeholders residing in the territory to be annexed, the name of the authorized agent of these freeholders, a "full description of the territory, and shall be accompanied by an accurate map or plat of the territory sought to be annexed."

The Nardini annexation petition is an exhibit in this case. It shows that 48 persons signed the petition, and there is a description of the area sought to be annexed and a map of that territory. If each of the other annexation petitions presented that same day contained a similar number of signatures, plus a map and description, it is very easy to understand that some discussion, examination and action by the Board of County Commissioners must surely have preceded the official action of September 3, 1957.

When would this board or its assistants check all of the detail, which it is necessary to check before official action is taken, if such examination and checking and discussion did not precede the official record of the conclusion reached by the board? That conclusion was entered September 3, 1957; and, as it was testified to by two members and the clerk of the board, something did occur, prior to the official record, which justified the conclusion entered on the record of proceedings held September 3, 1957.

Are we bound by the official record, or can oral testimony be introduced to supplement the record?

We are here interested in when the first presentation of the Nardini annexation petition took place. We realize that matters may be presented many times; our inquiry concerns the time when this petition was first "presented to the board of county commissioners at a regular session thereof * * *." (Section 709.03, Revised Code.)

The county commissioners hold "adjourned sessions of a regular meeting." The meeting of August 30, 1957, was such a meeting. At that time, there was admittedly in the hands of that board the Nardini annexation petition. Was it then "presented," within the meaning of the statute?

Webster's New International Dictionary, Second Edition, gives many definitions of the word "present," among them being: "1. To bring or introduce into the presence of someone, esp. a superior * * *. 3. To lay or put before a person for acceptance * * *. 6. Specif.: a. To lay before, or submit to, a person or body for consideration or action; as, to *present* a memorial, petition, or indictment. * * *."

As a further reason why we determine that the annexation petition was presented first, and hence took precedence over the incorporation petition, we find that the word "presented" is used in the sense of "filed"; for, in Section 709.04, Revised Code, the petition referred to in Section 709.03, Revised Code, is considered as being filed, and not presented, when it is given to the Board of County Commissioners. Section 709.04, Revised Code, in part, reads as follows:

"At the next regular session of the legislative authority of the municipal corporation to which annexation is proposed, after the expiration of sixty days *from the date of filing required by Section 709.03 of the Revised Code * * *.*" (Emphasis ours.)

We believe that, when a petition is placed in the custody of an official body, for the purpose of having such body act thereon, it is "presented," within the meaning of the statute. In the instant case, the date of filing was August 29, 1957, a day previous to the filing of the petition for incorporation of Brownhelm Township.

Under Section 305.10, Revised Code, the clerk of the Board

of County Commissioners must keep "a full record of the proceedings of the board, * * * entering each motion with the name of the person making it on the record. He shall call and record the yeas and nays on each motion which involves the levying of taxes or appropriation or payment of money. He shall state fully and clearly in the record any question relating to the powers and duties of the board which is raised for its consideration by any person having an interest therein, together with the decision on such question, and shall call and record the yeas and nays by which the decision was made. When requested by a party interested in the proceedings or by his counsel, the clerk shall record any legal proposition decided by the board, the decision thereon and the votes by which the decision was reached. If either party, in person or by counsel, except to such decision, the clerk shall record the exceptions with the record of the decision."

This section does not require that preliminary matters be entered of record, or that the clerk enter on any record the fact that annexation petitions have been filed. His duty consists of recording actions taken by the Board of County Commissioners wherein the rights of persons or property are involved.

The fact that he did not record the filing or the reading and examination of the Nardini annexation petition is not fatal to a determination as to the time when such preliminary matters did take place. Parol evidence has been introduced to establish these facts, and such evidence does not vary or change the record of September 3, 1957, the date when official action of the board did take place.

The parol evidence introduced herein does not come within the rule set out in *Commissioners of Noble County* v. *Hunt & Co.*, 33 Ohio St., 169. There is no contradiction of a record here, for we have a situation where no record of the first, or preliminary, presentation of the Nardini annexation was made. It is therefore proper to prove by parol testimony the fact of presenting such petition, by any competent witnesses who know the situation. *Ratcliff* v. *Teters*, 27 Ohio St., 66; *Dixon* v. *Sub-District No. 5*, 3 C. C., 517, 2 C. D., 298. See also: 98 A. L. R., 1243 *et seq.*, "IV, Admissibility to supplement record."

We determine that the Nardini annexation petition was presented to the Board of County Commissioners of Lorain County prior to the filing, with the township trustees, of the petition for incorporation of the village of Brownhelm. The injunction prayed for should be granted.

We believe we are on sound, logical and legal grounds for the conclusion reached herein; and all of our discussion can end; for when the annexation petition was presented, it took precedence over the subsequently-filed petition for incorporation. *Hoye* v. *Schaefer, Recorder, supra* (166 Ohio St., 277).

There are, however, other and equally compelling reasons why the injunction sought herein should be granted.

The map of and the description in the Brownhelm incorporation petition are not accurate; and, although the description, characterized by the witnesses as "sloppy," could, with the help of extrinsic evidence, be made to fit the area sought to be incorporated, it does not comply with the statute that an accurate description and map of the area accompany the petition for incorporation.

The question of the area to be incorporated being unreasonably large or small, is, in some measure, intertwined with the problem concerning it being not right, just or equitable that this new village be incorporated. The area sought to be incorporated as a village is a long, narrow strip of land, with a very narrow (100 foot wide) appendage running a mile south along the eastern edge of the township. We might, as individuals, commend the ingenious manner in which a design to incorporate an entire township was developed; but, as judges interpreting the law, we are compelled to say that such a territory as we have before us does not present a logical, lawful or reasonable area. In one respect—its length—it is unreasonably large; in another respect, its narrow width causes us to say it is unreasonably small. This area, if incorporated, would, to its inhabitants, present perpetual problems relating to streets and public utility services.

As we view this record, we determine that it has been established that it is not right, just or equitable that the incorporation be entered on the records of Lorain County, Ohio, and an injunction shall issue as prayed for.

The parties will prepare and submit an appropriate journal entry, giving exceptions to the incorporators.

*Injunction granted.*

DOYLE and SKEEL, JJ., concur.

SKEEL, J., of the Eighth Appellate District, sitting by designation in the Ninth Appellate District.